when you're ready Mr. Allensworth. How many lawsuits? I believe there's three, Your Honor. North Collins Special Utility District, High Point, which I believe actually two now. High Point just got dismissed, so I think I have two right now. High Point, what's that? Well, I apologize, Your Honor. Were you asking how many lawsuits related to this one lawsuit against the Public Utility Commission of Texas. We have a state district court lawsuit appealing the PUCT's decertification of state grounds. Those are in addition to this case? That's correct, Your Honor. All righty, Rudy. Yeah, and Your Honor . . . Can you figure out your strategy to maybe two courts instead of four? Well, as this court pointed out in City of I have to preserve my rights in state court. I have to keep the appeal alive. With respect to the competing providers, I don't have venue in the Western District of Texas against them, and I can't sue them in a decertification proceeding that they aren't parties to. Unlike the Green Valley case, which involved a competing provider who was moving to decertify, these are landowner-initiated decertification proceedings, and so in order . . . I can't sue the City of Montgomery or a municipal utility district in Montgomery County in the Western District of Texas, so I have to sue them. Well, that I understand. I still wonder about the multiplicity, and I don't want to take up your whole argument, but at some point, I would like all of you to explain to me why this case shouldn't be heard through the state courts. Yeah. Yes, Your Honor, and I'd like to address that for the court. Just at some point. Yes, and I don't mind taking that up right now, Your Honor. So, we've made an England reservation consistent with the Supreme Court of the United States direction, England versus Louisiana State Medical Board. We'd like to adjudicate our federal rights in federal court. Nonetheless, since this is an expedited state administrative proceeding, I can't stop it. I've asked . . . Well, you haven't stopped it. It's a done deal, right? Well, I've sought abatement of the PUCT proceeding before they've issued the federal law. Right, but what I mean is there is a case pending in the Austin Court of Appeals, right? Yes, district court case pending. It's stayed pending the outcome of this litigation. Well, that's my point. That's what I want you to address at some time. Yep. Your whole argument, England the heck, you know, to the contrary, notwithstanding, I don't understand why the state courts, in your view, are not competent to resolve this preemption claim. Yes, Your Honor. Let me . . . two reasons for that. The first is right now I'm up at the state court district level under a 13.2541 decertification. Those decertifications have no contested case. They don't allow me to put on any live testimony and they're not obligated to follow the federal, this court's directives in Green Valley. So right now, if I go through at the state court level, I'm not going to be governed by the Green Valley test. I'm going to be governed by whatever the state court decides to follow. In the Creedmoor case, which we've talked about in our brief, the Austin Court of Appeals specifically said they weren't going to follow the Fifth Circuit's ruling at that time, which was the North Alamo test. My client has made an election to preserve their federal rights in federal court because they would prefer to have it adjudicated under the Green Valley test, which we think is more faithful to 1926B than would be the state court's adjudication of those issues. But you've got all those due process issues in the state courts, right? Only under state court due process. We have not asserted any federal rights in that proceeding. The Texas due process is inadequate. Well, it might be adequate to defend on a state court basis, but we have not asserted a federal interest in that state court proceeding consistent with England v. Louisiana. And nobody in this case, Your Honor, the appellees have not sought Pullman abstention. There's been no issue asserting that. So we've been pursuing our federal rights consistent with this court's precedent. Okay. I want to begin before I turn to the Green Valley test with something that I think is important that's been lost in the briefing. We're here under 1926B. Those territorial protections exist for one reason, one reason only, to preserve an indebted rural water district's interest and to preserve the collateral that the United States Department of Agriculture takes over those loans. Dobbin, my client, has pledged that collateral to the USDA, and that 1926B exists exclusively to protect borrowers because they're the ones who are furthering the federal interest in making sure the USDA loans get repaid. That's the sole issue under 1926B. I'm going to address the Green Valley test, standing, and preemption. If there's time, I'll talk about Birchfield. But what we are asking this court is to reverse Judge Pittman's ruling on standing. Judge Pittman was wrong, and we're asking to reverse that, and then render on Dobbin's summary judgment. We believe the summary judgment evidence established that Dobbin met the Green Valley test as a matter of law. I turn to that test. First, Green Valley established adequate facilities to provide service within a reasonable time. There are two things that Green Valley also said. The first is an indebted rural water district does not have to be able to provide water service immediately. As this court stated in Bonk, it takes time to serve rural raw land, undeveloped land, and so there's always going to be time needed to develop infrastructure. Two, this court said that we are not a strict pipes in the ground jurisdiction. Green Valley does not require my client to have pipes running through the territory that's being taken from them. Dobbin put on unrebutted expert testimony that it had the ability to serve through Steve Duncan, its expert, which we've outlined in our briefing. Our expert pointed out that Dobbin has a policy of requiring developers to pay for that infrastructure if they enter into Dobbin's CCN. How many developers have been served by Dobbin at this point? At least three, Your Honor, in Montgomery County. There's one immediately southeast adjacent to the Sig Magnolia property that Dobbin's currently serving right now, and there's another developer that just entered on the west side. Let me ask you a question about the federal funding. The funding is to support a certain level of pipes and water treatment facilities, is it not? Yes, Your Honor. Nothing in the PUC's decertification order has impinged on Dobbin's ability to use those pipes and that water to retire the debt. Is that correct? That's correct, Your Honor. There is no . . . Factually, with 1926B, if nothing in the service that Dobbin now provides for which the loan was granted is impinged by the decertifications, then how is there any injury to Dobbin? That's a great question, Your Honor. The answer is no circuit has ever held so far that a rural water district's 1926B territorial protection is limited to the specific customers or infrastructure that it used its loan. No, but 1926 . . . look, I'm pretty familiar with this. Yes, Your Honor. From Green Valley, and the whole point of federal funding is not . . . they don't give you money on the come. They give the district money because the when this funding program was started 50, 80 years ago, it was a totally rural area. You didn't have these questions about impingements by municipalities. So they didn't give . . . they gave enough to satisfy a certain level of service, not future service. And I think 1926B, if we reach the merits, which we may not if Dobbin's not injured, has to be viewed in that light. Yes, Your Honor. I'll just add that since Dobbin has pledged its entire service area as defined under its CCN, including net revenues from future customers as part of its collateral and its debt . . . But a responsible lender doesn't lend money to build infrastructure that does not exist or is not, you know, on the drawing board at a particular point in time. That's right, Your Honor, but this responsible lender does require Dobbin to pledge its collateral to future customers. Okay, fine. That doesn't mean that Dobbin has to . . . that Dobbin's repayment of the debt is in any way jeopardized. Your Honor, 1926B protection is not contingent on Dobbin proving that its debt is compromised by this infringement. 1926B protection . . . We're talking . . . yes, but I said there's no injury. Well, okay. On the injury side, Your Honor, I would say . . . I want to . . . jumping to redressability. Dobbin is seeking an order to prevent the PUCT's order from being . . . from prospective enforcement, the continuing conduct under Green Valley. The remedies that that provides for Dobbin are several. First, I can't . . . Dobbin has to have a legal right to serve under 1926B, and so the legal right to serve is preserved by an order from the district court stating that the PUCT's decertification order is without effect. Second, I have state law remedies that are contingent on the Dobbin CCN remaining intact. Third, the CPUCT decertification is not final. It's on appeal, and so I would be able to use a district court order that would redress an injury there as well. And finally, the competing providers are already relying on the PUCT's decertification order. It seems to me, I've never heard of injury being, if we win, we're not injured. No. Injury has to be something apart from the fact that we have lawsuits that have . . . doesn't it? Yeah, Your Honor, the injury would be if we lose. If this, if this court holds that it has no standing, as an example, then Dobbin will . . . Then you make your arguments in state court. Or alternatively, the other federal litigation that I have against the competing providers. Well, then, you know, if that's valid litigation, you make those. So I don't really see what you gain by maintaining this lawsuit. Well, I would only say, I would only add, if the court is clear that they said the standing issue is not against the PUCT, but that doesn't interfere with Dobbin's rights to seek remedies against competing providers, that would be fine. The issue is the competing providers are already relying on the PUCT's not final order to deprive Dobbin of federal rights. And if they go to federal . . . when we go to the Southern District of Texas and pursue those rights against the competing providers, if they say you don't have the legal right to serve because the PUCT has already acted, then I've . . . then that's my injury. If we dismiss this case tomorrow, you would make precisely those same arguments in the Southern District of Texas? Yes, Your Honor. But in addition, I think this panel is bound by Green Valley which said a water district like my client has standing even after the PUCT has acted to decertify. That was very clear in Green Valley and we relied . . . Dobbin and others have relied on that. And we think that does afford standing under Green Valley which does bind this panel. I do want to address . . . running out of time, I want to attack kind of the central issue in this case which is why do entities like Dobbin require developers to fund? Because that is where the developers in this case have primarily relied on and put their eggs in that basket in saying that we aren't making service available under this circuit's pipes on the ground test. Dobbin is a functionally rural water co-op. We put on undisputed evidence that all Texas water suppliers require developers to fund infrastructure if they want to buy into the system. Dobbin's existing customers have already bought into the system in the form of membership fees, impact fees or funding infrastructure. What the developers are asking for here is for Dobbin's existing members to subsidize infrastructure. Now, what would that look like if Dobbin paid for the developer to extend the line from Dobbin's system or even to build a stand-alone facility? Go ahead, Your Honor. Yeah, you're not talking about just a line. You're talking about water treatment and what on water wells. You're talking about the whole, the whole schmear. Yes, Your Honor. 1926 A.R. Basically, you're saying they can't develop their property unless they can't have water unless they pay for it themselves and then deed it to you. So what do they get out of this? Yes, Your Honor. So first of all, they pay for that water infrastructure and then they sell that water infrastructure to customers. Now, if Dobbin's customers paid for it and then I charged them through my rate base, they would still, the developers would still sell that infrastructure but they don't remit that money back to the water supplier. So what they're asking is for Dobbin's existing customers who've already paid to become part of that system to subsidize that development. Set aside the water for a minute. Dobbin's not going to pay for the roofs, the roads, or the windows either. That infrastructure is something that the developer is selling and securing a profit for when they go to lot owners or to homebuilders. Now, Dobbin also doesn't get a windfall, Your Honor, because it has a perpetual maintenance obligation over all infrastructure within its CCN. So if the developer, let's assume Dobbin paid for it and the developer gets halfway through the development and decides to abandon it, in part maybe because interest rates have gone up, Dobbin still owns that infrastructure. Dobbin still has to fund it and Dobbin's existing customers have to pay for it even though no customers materialize it. Let me ask you a couple of things. Number one, Maya, I thought that the PUC orders were final, the decertification orders. Yeah, I want to address that. We don't think they are. They're on appeal right now. I don't think they are. Well, I'm going to explain that, Your Honor. Under 132541A, under 13254A-1, the orders would be final if that was a proceeding. There is no such statute under 13.2541 that says they're final. And so our position is they are not final, Your Honor. Again, if this was under 13 . . . That's a question of I'm not asking the court to decide that at all. I'm saying . . . Well, excuse me, but the whole premise of the argument is that you have a . . . that you avoid ex parte young if there's something that the PUC can be ordered to do. And if the order is final, I take the position, Green Valley says that you can't reverse or invalidate a final order. Yes, Your Honor. I'm out of time, but I would . . . Go ahead. Yes. All I would say is the decertification had already occurred in Green Valley as well, and this court in Bonk said that that was no impediment to the . . . But there was a possibility of enforcement going forward, and here there is not because this was, at least in the one case, it's service provided by the local water supply, which doesn't require a CCN activity, is that right? Your Honor, they don't require a CCN unless my client has a CCN in the territory, in which case state law does prohibit them from interfering. That's the point. That's what Judge Pittman got mixed up about was state law does not allow Magnolia, McMudd 180, excuse me, or the City of Montgomery to serve in my client's territory if my client has a CCN or is lawfully furnishing service under state law. I'm out of time. Wait, wait. I'm not through yet. No, you're not out of time. I'm going to keep you here a couple more minutes. I realize I'm taking up a lot of your argument and I'll let you have your say, so why don't you try to go quickly through the essence of your argument? Yes, Your Honor. I was close to getting there, but the point was Dobbin receives no windfall. We've got a maintenance obligation. If the court holds that Dobbin's practice of requiring developers to pay vitiates its 1926B rights, there will not be 1926B protection for rural water districts in Texas. On this record, this record demonstrates that all water suppliers require developers to pay. That's a universal practice in Texas. There's no testimony to the contrary, and indeed the competing providers are going to require the developers to pay as well. Your Honor, I'll reserve the next five minutes. I don't want to eat too much into counsel's time, and I'll come back with more to say, and answer court's questions. Mr. McKenzie, you're representing the PUC, right? Yes, Your Honor. Thank you, and may it please the court. My colleague on the other side began with the merits, but of course, jurisdiction is always first. As representatives of the sovereign, the PUC officials may only be sued for prospective relief that would redress Dobbin's injuries here. The district court was correct to hold that Dobbin lacks standing to pursue its claims, and this court should affirm. Once the PUC issued its decertification decisions, it no longer had any role to play with respect to the disputed territories. That's because as a municipally owned water service and a municipal utility district, Dobbin's competitors are not required to secure the PUC's permission in order to serve decertified territories. Now, it's true that if the tracts of land at issue here were subject to a valid CCN, then Dobbin's competitors would need to seek permission from the PUC in order to serve those tracts, but in order for those tracts to be subject to a valid CCN, the PUC's prior decertification decision would have to be invalidated, and that's precisely the sort of relief that Green Valley held to be quintessentially retrospective, and therefore out of bounds under Ex Parte Young. Well, he says it's not a final order yet. The PUC decertification decisions are subject to appeal in state court, so in a sense, there are ongoing proceedings, but for all practical purposes, the decertification decisions are final. The PUC no longer has any role to play, and Dobbin's competitors are relying on those decisions to actively provide service. So, suppose we abate this appeal pending the state court? The state would not object to that disposition, Your Honor. It's our position. Why did the state agree to stop the state court appeal process pending this case? I'm afraid that's not in the record, but it's the state's position that state court is the appropriate place to have this conversation. The state court proceedings do not pose the same jurisdictional barriers, and of course, the state court should be given, where possible, the first opportunity to pass on the validity of state law in light of federal law, and of course, the state court is obligated to apply 1926B. So, the state court is the right place to start, but I also want to alleviate any concerns the court might have about the problem. The issue here is not just the multiplicity of suits, and it's not even just that Dobbin failed to sue the appropriate defendant. The problem is that Dobbin sat on its rights. When Dobbin initially filed suit in 2021, the PUC's decertification decisions were ongoing, and at any time, Dobbin could have filed a motion for a TRO or a preliminary injunction to halt those proceedings, but instead, Dobbin waited until six months after the second decertification decision issued to file a motion for that sort of relief, and it's not as if Dobbin didn't have time in the interim to file such a motion. The district court lawsuit began in July of 2021. The first decertification decision didn't issue until October of that year, and the second decertification decision issued in January of 2022, but Dobbin waited to file a motion for that. Yeah, but if those orders are not final, then your whole argument about prospective relief fails, does it not? No, Your Honor, because nothing that the district court might do would redress Dobbin's . . . let me rephrase. The form of relief that Dobbin requests, an order to redress Dobbin's injuries, regardless of what happens at the district court, the decertification decisions are a fait accompli. They're already being relied upon here, and so the state court proceedings, while they're ongoing, they don't solve Dobbin's redressability problem, but that's not even to speak of the ongoing litigation in the Southern District of Texas against Dobbin's competitors. Look, what Dobbin really wants here is an order that prevents its competitors from relying on the PUC's decertification decisions, and so it should sue its competitors to get that relief, and it has, in fact, sued its competitors in the Southern District of Texas and can seek appropriate relief there. Again, those lawsuits do not pose the same jurisdictional barriers as this one does. I want to briefly touch on the merits here. No, go back. I don't understand. He says Green Valley does not bar this lawsuit. Explain precisely your argument why Green Valley bars it. Green Valley bars this lawsuit because Green Valley holds that the type of lawsuit is either prospective or not redressable, so Dobbin asked for two forms of relief. The first was an order halting the PUC's ongoing proceedings. As the district court correctly held, that request was mooted once the PUC issued its decertification decisions. Dobbin has also requested an order prohibiting the PUC from enforcing its prior decertification decisions. It's true that under Green Valley, that is a form of prospective relief, and within the bounds of Ex Parte Young, but Green Valley did not address the follow-on question at issue here, whether that form of relief would redress Dobbin's injuries, and here it would not because Dobbin's competitors are not required to seek permission from the PUC in order to serve tracts of land that are not currently subject to a valid certificate of convenience and necessity. For further authority on this, I would point the court to its Catera decisions surrounding the November 2020 elections. There the court held that a suit against a state official cannot proceed if the official does not obey the challenged law, because enjoining that official would not stop an injury to the plaintiff, and I'll give the court a case site there, 28 F. 4th, 669. At the end of the day, the issue here is that Dobbin must show that it has standing at every stage of litigation, and at the motion for summary judgment, Dobbin could not show that an order prohibiting the PUC from enforcing its injuries. The PUC was done at that point with these proceedings. If there aren't any other questions on justiciability, I will briefly touch on Dobbin's preemption arguments. Dobbin has asked this court to hold that the streamlined expedited release provisions of the Texas Water Code are preempted by federal law. It is, in asking for what sounds in the nature of... Dobbin's arguments in this regard, they sound in the nature of a facial challenge, and so Dobbin must meet the high burden under Salerno of showing that there are no set of circumstances in which the streamlined expedited release provisions would not be inconsistent with federal law. Dobbin points to a particular subsection of the Water Code that instructs the PUC that it may not deny a decertification petition solely because, or based on the fact that the current CCN holder is a federal loan recipient. Now, if 1926B froze into place state-created monopoly rights as they currently exist, that would be a only services provided or made available through federal loan recipients. And those are precisely the sort of services that Texas' for-cause decertification provisions don't touch. The for-cause decertification provisions are there for release of tracts of land, quote, not receiving water or sewer service. So, in the run-of- expedited release provision, as Judge Jones, you noted in your concurrence to Green Valley, there simply is no inevitable conflict here, and that's what we're looking for on a facial challenge. If there are no further questions, we ask that the Court affirm the judgment below. Thank you. All right. Thank you. Mr. Sequist. Yes, Your Honor. Good morning. May it please the Court. My name is Gunner Sequist, and I have the pleasure today of representing two developers, Sig Magnolia L.P. and Redbird Meadows Development, LLC, who are property owners in Montgomery County, who purchased tracts of lands to develop large residential subdivisions, who each independently in January of 2021 approached Dobbin Plannersville Water Supply Corporation to inquire as their ability to provide water service, who each provided Dobbin the requisite and necessary information regarding their developments, including their water needs, and indeed the location, the number of connections they would need, and the phasing schedules, all of which is sufficient for Dobbin and its engineers to convert that information into the capacity that it would have to have to provide water service. And in fact, the evidence in this case, Your Honor, is that they did that and informed both of my clients that they lacked the adequate capacity and infrastructure unless my clients on their own property built an entire self-contained water system. Because, Your Honor, that demonstrated, as a matter of law, we submit that Dobbin Plannersville could not make water service available. My clients went to the PUC and obtained a decertification, and that decertification was granted, and they've been removed from Dobbin CCN. Now, my friend at the AG's office ably argued, I think, the jurisdictional issue, but I do want to raise a couple of points. I think the important point to address Mr. Allensworth's comment about Green Valley is Green Valley was strictly on the pleading issue, and the question there was whether or not the plaintiff in that case had pled some potential prospective relief. And what the court said was, because you have asked to enjoin the PUC's enforcement going forward, and because you have asked to enjoin the competitor, who was a party in that case, from providing competitive water service, that, at least on its face, appears to state a prospective relief. And the court even said, it appears that at least one form of prospective relief is possible. This case, Judge Pittman's order, picks up, though, where Green Valley left off, which is, okay, let's look at what that relief might actually be. And what Judge Pittman correctly decided was, there is actually no ongoing PUC enforcement to enjoin, and because the competitors aren't part of this case, there's nothing I can do to address Dobbin's alleged harm about them relying on an order that has already taken place. And Justice Jones, I think the issue on the pending state court appeal is that regardless of the outcome of that appeal, it will not affect the relief that Dobbin is asking. And the reason for that is, there are two potential outcomes. The first is, the state court affirms, in which case, there is no further enforcement, decertification is final, and the PUC does nothing. So there's nothing to enjoin there. The alternate is, the state court reverses, in which case, there is no decertification and there's nothing for the PUC to enforce. And so, under either respect, the relief that Dobbin is seeking in this case does not redress its harm. But what consequence would flow from this court finding that the decertification orders were unlawful? Your Honor, I guess it depends on the basis for that. If the court were to find that the decertification orders were unlawful or preempted somehow, the consequence of that would effectively be that those orders would be invalidated, and in which case, my clients would still be within the TCN, and ultimately, you would have now two developments of people, or one development of people, that would have no water supply, because Dobbin can't provide it. Well, wait a minute. I thought the train was already on the tracks, practically, and one of the developments had already started receiving water from Montgomery County. That's exactly right, Your Honor, from the mud. And so, the complication of deciding that that order was illegal or unlawful at the time, and we submit on the merits, Your Honor, and I'll talk about that in just a moment, that it absolutely was not, and in fact, fits both under state law and the Section 1926B standard. But the ultimate outcome of that is the people who are out there, and the train is very much on the tracks, Your Honor, would no longer have a water supply, because the Montgomery County mud wouldn't be able to provide that water. Did that answer the Court's question? Okay. Your Honor, so . . . Explain to me once more. If the PUC order is reversed in the state court, then why are you saying it's not redressable? Because if it's reversed in the state court, then there is no further enforcement action in regards to Dobbin that needs to be enjoined. If anything, what Dobbin would be saying is don't enjoin enforcement. You would want enforcement to proceed based on the reversal of the PUC's decision. But that's not what they're asking for. They're asking for the PUC to take no further action. So, either way, under the state court, the relief they're seeking is not going to address their injury. Your Honor, as to the merits of the claim, there are kind of two points that Dobbin makes. The first is that somehow my clients didn't sufficiently request service under the Green Valley test. Of course, the request for service finds no home in the statute whatsoever of 1926B. It is a judicially created framework to determine or evaluate what it means to provide or make service available. And the request, the phrasing, adequate facilities to provide service within a reasonable time of a request, is a practical tool to measure when does a reasonable time, what allots a reasonable time to provide service. In this case, Your Honor, Dobbin argues somehow that my clients were required to make a request for service by signing their nonstandard service agreement. The problem with that, Your Honor, is that the nonstandard service agreement is not simply an application for service, nor does it have any additional information request in it than what my clients already provided. What the nonstandard service agreement is, is a contract. And it would bind my clients, if they signed it, to design, permit, and construct the entire infrastructure necessary to serve these developments. And of course, Your Honor, both of the applications that the plaintiffs, or excuse me, that Dobbin has pointed to in this case, don't have any request for any additional information. Really, their position in this case is not that we didn't even make a request, because we did approach them. We provided them all of the information necessary for them to make a determination. They were able to make a determination, and in fact, told both of our clients exactly what would need to happen. Dobbin couldn't make service available with its infrastructure. Our clients would have to build self-contained water systems and donate part of their property in order to achieve that goal. So, Your Honor, there's no question that my clients have given Dobbin every opportunity to make clear or to offer how it can provide water service within a reasonable time of the request. What Dobbin is saying is, in order to somehow cause, trigger its obligation to provide service, or to show that it could provide service, we had to agree a priori to fund whatever they decided was necessary. We understand that point. What's your next point? Thank you, Your Honor. My next point is, that doesn't make service available under the Green Valley test. And what Green Valley has told us is that inherent in the concept of making water service available is the actual capability to provide it. And if we borrow from the Tenth Court of Appeals, the court has said in Muldrow that that means the capacity to serve an individual customer. And the court said that's because if the water facility doesn't have, or excuse me, the water utility does not have that adequate infrastructure, it's the individual, it is the individual customer that suffers. In this case, the developer and ultimately everyone on the development who needs to obtain water. Your Honor, in this case, Dobbin, there's really no dispute that Dobbin . . . But Muldrow held in favor of the utility, right? It did in that case, Your Honor, because in that case they actually had facilities. This is a case where Dobbin doesn't even really purport to be able to serve off of its own infrastructure. You heard that Mr. Duncan, Dobbin's expert, offered some scenarios by which it could do that. But it's undisputed in this case that the time my clients approached Dobbin, their capacity was less than even half of the first phase of what the development would be. And basically, all of these sort of stop-gap measures that Dobbin tries to fall back on were inadequate even to serve the first phase, let alone the ongoing construction that is in the record for the 900 lots that were contracted for . . . Let me just ask you two general questions. Number one, when we were looking at this, Green Valley was two or three years ago. And there seem to be a lot more of these water cases pending now. Is that right? That is right, Your Honor. And what we're seeing is what was supposed to be a statute to protect rural water users is now running up against suburban expansion. Obviously. Yes. And in fact, if you look at the Deer Creek case which we cite, there is a footnote in the dissent which says, you know, to refer to these as rural water users is blushworthy. I mean, this is a 1500 and 700 rooftop residential subdivision development. These are not the types of users that were contemplated by Section 1926A or B. And, Your Honor, I see I'm out of time. May I have one minute? Go ahead. I gave him extra time. I just want to make the point, Your Honor, in rebuttal to the argument that somehow our interpretation deprives Dobbin of its 1926B protection. That's absolutely not true. What our interpretation in this case does, what's saying you actually have to have infrastructure to provide the water service, not foist that responsibility entirely on a developer to build a self-contained water system. What that does is not eviscerate the protection of 1926B for Dobbin. What it does is appropriately tailors the protection to the scope of the statute, which is for service, for tailing of service that is actually provided or made available. And where you have a utility like Dobbin who is not providing or making that service available but intends entirely on the developer to do so, that just completely subsumes and, if anything, eviscerates Green Valley's test. Because as Dobbin's own engineer testified, then there's nowhere that they can't make service available, regardless of what infrastructure they have there. As long as the developer is there to basically drill them a groundwater source, put in all of the water treatment facilities. Going back to Ex parte Young, the state argues that because decertification occurred and then you created or they authorized these muds to be created, that they do not have to go to Dobbin? Or that they do not have to go back to the PUC? That is correct, Your Honor. And what law says that or statute? Your Honor, it is in Chapter 13. They're cited in both our briefs and I can grab the citation for you. Well, it's in your brief, right? It absolutely is, Your Honor. And the key point there is once you're decertified, then these other municipalities, either the City of Montgomery or Montgomery County Mud, don't require a new permission from the PUC. And so what Dobbin has to do, and the relief it is specifically asking for, is the retrospective and validation of that PUC order. Because once the order is entered, then there is no further enforcement, there is no further authorization, there is no further role for the PUC. And I see I have gone over my time. Well, let me ask you another question. Again, I'm still a little hung up about the PUC. If the state court were to reverse the PUC order, then that would not reverse the creation of your muds. Is that right? It would not, Your Honor. And it's an important point. I think the muds serve several purposes. The muds are not only there for potable water service. They also provide sewer service, which Dobbin is unable to offer, roadways, drainage, those sorts of things. So no, the reversal of the PUC order would have no effect on the creation of the mud. But it would have an effect on the water. Yes, Your Honor. It would because if you invalidate that order, reverse that order, then effectively the CCN goes back to its original form, and at that point then my clients would not be, or the mud would not be able to provide water service. Okay. So they'd have to work out some arrangement at that point with Dobbin. Is that right? That's correct. Or else, or else pursue it further. Correct. Yes, Your Honor. On the preemption issue. Correct. Okay.  because there is a broader question of, you know, whether there is preemption or not. Again, I think as you noted in your concurrence in Green Valley, frankly the decertification process under state law can live in harmony fairly easily with the 1926b protections. And in particular, the state court proceeding does allow, even if, does allow for compensation for all of the concerns that Dobbin has raised. It is noticeable, it is notable as a procedural note in this case that Dobbin chose not to participate in that process at all. Right. Right. But that would, they can't change the law. They just didn't avail themselves of it. That's correct. They had every right to, they just didn't do it. They chose not to. And so what, why are your clients agreeing, or are your clients parties to the Austin case? Yes. So we're here, are you talking about the state court appeals? Yes. Yes, Your Honor, we are because we were the petitioners in the decertification petitions. And so to appeal that case, you have to name both the PUC and us as interested parties. And I still don't understand, why are you all dissatisfied with just pursuing this through the state court? I mean, this is what happened in Green Valley. It's what happened in, there was another one that was pending at exact, wasn't Cibolo, but it was another one. I mean, what's wrong with the state courts here? Your Honor, I think the concern, and I won't speak obviously on behalf of the PUC, but I think the concern was ultimately that because Dobbin is challenging or believes that the whole state court's process is preempted, that we can't even go through that process, that we wanted to, that it made more sense, at least on the front end, to resolve the federal issue. I personally, and from my client's standpoint, we do believe that the state court has the ability to address, I mean, state courts routinely apply supremacy principles, so I don't think that's something that's beyond their reach. Okay, thank you. Thank you. All right. All right, Mr. Allensworth. Thank you, Your Honors. I'll be as brief as I can. I don't have much time. Under Green Valley, it already addressed redressability. That relief, this is a quote from Green Valley, we're seeking the exact same relief that the petitioner was seeking in Green Valley. That relief . . . But if you can't make service available, I mean, we could say that, you know. Theoretically, it's prospective. It goes back to Judge Pittman, and Judge Pittman can say, there's nothing in this 1926B that requires the developer to pay for everything so that Green Valley can . . . so that Dobbin can service it. We could lose anyway. Well, if it was remanded, Your Honor. However, every circuit that has addressed the issue that you've just raised has rejected it, that the pipes in the ground test does not care whether the water supplier demands that the developer . . . Well, it has to be reasonably available in a reasonable time. That's correct, Your Honor, but the two circuits that have addressed it have held that's not relevant to the pipes in the ground test. That's relevant to a separate test called the confiscatory cost offense that has not been addressed by the Fifth Circuit, and these appellees did not ask this Court to create that. So under the pure pipes in the ground test, it's simply not relevant how they're going to pay for it. It's our position, Your Honor. The other standing issue that I didn't get to originally was preemption creates standing. Green Valley did not address the propriety of Texas Water Code 13.2451, which is preempted. It stands as an obstacle to 1926B. 13.2541 directs the PUCT to ignore the federal indebtedness of a borrower and by extension federal law. In addition . . . Go ahead, Your Honor. You can argue what you want to. It's at the pleadings, right? Yes, Your Honor. It's all in the briefings. No, no, no. I mean, that issue was a matter of the pleadings. Judge Pittman didn't reach preemption. That's correct, Your Honor. Since Judge Pittman issued on standing basis, he did not address preemption. Now, he should have addressed the preemption argument as a matter of standing because preemption does afford separate standing for Dobbin to assert its rights, standing that did not exist in Green Valley. Let me ask you a question about that, though. If Dobbin didn't avail it . . . I mean, this was in my concurrence in Green Valley, that if the PUCD certifies part of your territory at some measurable loss and you're entitled to compensation under state law . . . That's a great question, Your Honor. The reality is we can't accept that state compensation because federal regulations prohibit. Federal regulations govern the transfer of collateral property like my client's rights and state that . . . Collateral property is not raw land. It is under the . . . Yes, Your Honor, it is under our note. No, where? The future . . . Cite me the federal law . . . 7 CFR 1782.12, Your Honor, that the pledge of future customers includes that service territory under 1926 and that we have to seek permission from the USDA. Furthermore, had I participated in a compensation phase, we'd be arguing right now about how I'd waive my rights and why couldn't it be in state court. And I do want to address something you said in your thoughtful concurrence, Your Honor. Under 13.2541 is not a four-cause decertification. The PUCT operates under a strict pipes in the ground test when it decertifies property. It has nothing to do with Dobbin's starving existing customers who want water. It has nothing to do with Dobbin poisoning customers. 13.2541 is an intentionally abbreviated, no contested case proceeding. It has nothing to do with Dobbin's adequate continuous service to customers . . . Well, that's because there's, you know, not every piece of rural land in the state is subject to 1926B, right? Well, our position, Your Honor, is that every part of rural land in Dobbin CCN is, since it's been pledged as collateral to the United States Department of Agriculture. When was Dobbin created? 1977, I believe, Your Honor. Okay, a couple other issues I want to address very briefly. On the capacity issue, Green Valley already addressed. We don't have to have immediate capacity in response to developers. The rural issue is not relevant. The rural issue is relevant to 1926A when you decide whether to issue the loan. It's not relevant to 1926B's protection. 1926B is not contingent on it being rural today. The request issue has been briefed. All I would say is they did not submit sufficient info as we briefed, nor did they submit the engineering fee, the $1,000 engineering fee, which is intended to defray Dobbin's cost to have its engineer perform a hydraulic analysis. We had to discover through litigation how much service they actually needed, and we've attempted as best we can to respond to that. Developers talked about there not being any supply. If the court were to rule, what are we going to do about these users? In North Alamo, it was already addressed. An order, if we seek relief, nobody's going to be deprived of water. It will be an orderly transfer of water from MUD 180. How many lots have they already developed? At the time of the summary judgment proceeding, it was about 150. What's the matter right now? I think probably 200, 300. 200 is what they allege in their brief. And our allegation, we're not seeking to deprive those people of water. In North Alamo. No, because they provided their own water, and you're just going to take it over. That's correct. And we're going to seek damages for the infringement, for the taking of Dobbin's net revenues that they would have been entitled to. But we're not going to prevent the use of water. Let me just add one more thing. Dobbin is not in default of its federal loan, correct? That is correct, Your Honor. And then because I'm out of time, I'll take any questions the court has, but otherwise I believe I've addressed everything I can. Okay. Thank you very much. Thank you. All righty. That's a workout. Thank you very much. We'll be in recess until 9 a.m. tomorrow. All rise.